Malcolm A. Heinicke (State Bar No. 194174)
Erin J. Cox (State Bar No. 267954)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560
(213) 683-9100; (213) 687-3702 (fax)
malcolm.heinicke@mto.com
erin.cox@mto.com

Attorneys for Defendant
99¢ ONLY STORES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALEXANDER JOHNSON,<br><br>Plaintiff,<br><br>vs.<br><br>99 ONLY STORES and DOES 1 - 10,<br><br>Defendants. | Case No. 12-cv-1308-DSF(AJWx)<br><br>**DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**<br><br>Judge: Hon. Dale S. Fischer<br>Date: March 26, 2012<br>Time: 1:30 p.m.<br>Courtroom: 840 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ............................. 1

II. ARGUMENT .................................................................................................. 2

    A. Defendant's Promotional Videos Are Not a "Service" of a Place of Public Accommodation Under Title III of the ADA ........................ 3

    B. Even if Generally Covered by the ADA, Defendant's Promotional Videos Available Online Lack the Requisite Nexus to Services Available in a Physical Place of Public Accommodation ............................................................................... 8

III. CONCLUSION ............................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Carparts Distribution Center v. Automotive Wholesaler's Ass'n*,
   37 F.3d 12 (1st Cir. 1994) ...................................................................5, 7, 8, 9

*Coast Van Lines v. Armstrong*,
   167 F.2d 705 (9th Cir. 1948) ..............................................................................8

*Independent Towers of Washington v. Washington*,
   350 F.3d 925 (9th Cir. 2003) .............................................................................6

*National Federal of the Blind v. Target Corp.*,
   452 F. Supp. 2d 946 (N.D. Cal. 2006)........................................................passim

*Nunes v. Ashcroft*,
   375 F.3d 805 (9th Cir. 2004) ...........................................................................11

*Ouellette v. Viacom*,
   2011 WL 1882780 (D. Mont. Mar. 31, 2011).................................................11

*Rendon v. Valleycrest Productions, Ltd.*,
   294 F.3d 1279 (11th Cir. 2002) ............................................................5, 6, 7, 10

*Stichting Pensioenfonds ABP v. Countrywide Financial Corp.*,
   802 F. Supp. 2d 1125 (C.D. Cal. 2011) ............................................................6

*Uribe v. Countrywide Financial Corp.*,
   2009 WL 1953413 (S.D. Cal. July 7, 2009).....................................................6

*Weyer v. Twentieth Century Fox Film Corp.*,
   198 F.3d 1104 (9th Cir. 2000) ...............................................................2, 9, 10

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011).......................................................7, 10

**FEDERAL STATUTES**

42 U.S.C. § 12181(7) ..............................................................................................5, 7

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL REGULATIONS**

28 C.F.R. Pt. 36, App. C ................................................................................... 3

*Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities,* 56 Fed. Reg. 35544 (July 26, 1991) ........................... 4

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff brings this action advancing the unprecedented claim that merely promotional Internet videos are a service subject to ADA access restrictions regardless of the sales nature of the underlying business, and regardless of the fact that the alleged lack of captioning does not in any way deny equal access to the goods actually sold in the physical stores.  In response, Defendant 99¢ Only Stores has sought dismissal on the grounds that (a) it is a sales establishment, not a service establishment, and so videos that merely promote the sale of goods are not a "service" covered by the access requirement of the ADA; and (b) even if the videos are somehow a covered "service," the particular claim at issue here still fails as a matter of law under the Ninth Circuit's nexus requirement because Plaintiff does not and cannot allege that the service he was allegedly denied is one which is also offered to the public at Defendant's physical stores.

Unable to address these two independently sufficient bases for dismissal, Plaintiff instead conflates and mischaracterizes them.  Specifically, Plaintiff attempts to suggest that Defendant's motion rests on the premise that the ADA precludes only "physical barriers to entry" at public accommodations and can never apply to off-site conduct.  Of course, Defendant is not making such a categorical argument.  Instead, Defendant carefully explained in its opening papers that "[w]hile the ADA's protections are not necessarily limited to assurances of physical access to brick-and-mortar facilities," a plaintiff seeking to assert a claim such as the one at bar must establish both that the videos in question are a covered "service" and also that there is "a nexus between the service at issue and those of the physical location—*i.e.,* he must establish that the service he is allegedly being denied is one which is also offered to the public at the actual physical store." (Mot. at 3.)  Here, Plaintiff does not and cannot allege either.

*First*, Plaintiff does not and cannot dispute that Defendant is a "sales establishment" and not a "service establishment" under the ADA.  Accordingly, the

1 | ADA requires equal access to the purchase of goods from Defendant.  But, Plaintiff
2 | does not and cannot dispute the fact that that the alleged failure to provide
3 | captioning for the online videos in question in no way denied him equal access to
4 | the actual purchase of goods.  This is because Defendant does not sell these videos
5 | nor does it use the challenged portion of its website to consummate the sale of
6 | goods.  In fact, *no* portion of Defendant's website is used to consummate the sale of
7 | goods—a customer *must* enter an actual 99¢ Only Store in order to purchase
8 | Defendant's products.  This is necessarily the case, because Defendant does not
9 | accept—and does not even have the capacity to accept—payment via its website.

10 |     ***Second***, the Ninth Circuit has made clear that even if the videos in question
11 | were somehow a covered "service," Plaintiff must still establish that this service to
12 | which he is allegedly being denied access is one which is also offered to the public
13 | at Defendant's physical stores.  *Weyer v. Twentieth Century Fox Film Corp.*, 198
14 | F.3d 1104, 1114-15 (9th Cir. 2000) (defining the limiting effect of the "public
15 | accommodation" requirement and holding that "whatever goods or services the
16 | [physical] place provides, [the business] cannot discriminate on the basis of
17 | disability in providing enjoyment of those goods and services").  Here, Plaintiff
18 | does not and cannot dispute that Defendant does not screen or sell the online videos
19 | at its physical stores, nor does it use the challenged portion (or any portion) of its
20 | website to consummate sales of goods that it also sells at its physical stores.

21 |     For these reasons, Defendant respectfully requests that the Court grant this
22 | instant Motion to Dismiss with prejudice.

23 | **II.**     <u>**ARGUMENT**</u>

24 |     Although the veracity of Plaintiff's factual allegations are not before the
25 | Court on this Motion to Dismiss, it bears noting that Plaintiff does not even attempt
26 | to rebut the statements in the opening papers explaining that the promotional videos
27 | at issue can in fact be viewed with captions on the Company's official YouTube
28 | channel.  Instead, Plaintiff simply repeats his earlier allegation that he "wanted to

view the videos on Youtube.com" but "not a single one had captioning." (Opp'n at 2.) In reality, however, all of 99¢ Only Stores' self-produced promotional videos at issue are available on its official YouTube channel (http://www.youtube.com/user/99CentsOnlyOfficial/featured), and for all of those videos that contain audible narration (*i.e.*, the narrator is speaking over the video), that narrative content can be viewed in captions through the Transcribe Audio feature. Specifically, to activate the captions for a particular video with narrative content, the viewer simply clicks the "cc" (closed captioning) feature and selects "Transcribe Audio" feature. For this reason, Defendant strenuously submits that the underlying claim is factually unfounded. *See* 28 C.F.R. Pt. 36, App. C at 901 ("The auxiliary aid requirement is a flexible one. A public accommodation can choose among various alternatives as long as the result is effective communication.").

In any event, the Court need not reach this factual issue because the instant Complaint fails as a matter of law for two independently sufficient reasons: (a) Plaintiff does not and cannot dispute that Defendant is a "sales establishment" that does not consummate any sales through its online promotional videos, and as such, the videos are not a "service" covered by the access requirements of the ADA; and (b) even if the promotional videos of a sales establishment are a "service" covered by the ADA generally, the specific claim here would still fail because Defendant does not screen the videos at its stores or use the videos to consummate the sale of goods that are also sold at the stores, and so there is not the sufficient nexus to the physical stores as required by Ninth Circuit law.

### A. Defendant's Promotional Videos Are Not a "Service" of a Place of Public Accommodation Under Title III of the ADA.

Through its opening pleading, Defendant demonstrated that it is a "sales establishment" for purposes of the ADA, not a "service establishment," and that as a result, the ADA governs its conduct in the actual sale of goods. In response,

1 Plaintiff does not dispute that Defendant is a "sales establishment" for purposes of
2 the ADA. And, Plaintiff does not dispute that the alleged failure to provide
3 captioning for the online videos in question in no way denied him equal access to
4 the actual purchase of goods. Specifically, Plaintiff does not and cannot contend
5 that Defendant used the online videos in question to consummate sales transactions.

6 Unable to escape the reality that Defendant is a "sales establishment" and the
7 reality that he has been provided equal access to the sale of goods, Plaintiff
8 effectively argues that the ADA governs all of the conduct of any place of public
9 accommodation, no matter the type of conduct and no matter the type of
10 establishment. Specifically, Plaintiff argues that the statute applies "to the services
11 *of* a place of public accommodation, not services *in* a place of public
12 accommodation." (Opp'n at 4 (emphasis in original).)

13 This argument entirely misses the mark. Defendant does not contend that the
14 ADA can never apply to conduct it takes outside its physical stores. Instead,
15 Defendant argues that because it is a "sales establishment," and not a "service
16 establishment," the ADA requires that it provide equal access with respect to the
17 sale of goods. Because it is undisputed that the Defendant does not use the online
18 videos at issue to consummate sales, these videos are not covered conduct under the
19 ADA.

20 A facility is considered a place of public accommodation, and subject to the
21 ADA's public accommodation requirements, only "to the extent that its operations
22 include those types of activities engaged in or services provided by the facilities
23 contained on the list of 12 categories" of public accommodations specified in Title
24 III. *Nondiscrimination on the Basis of Disability by Public Accommodations and in*
25 *Commercial Facilities,* 56 Fed. Reg. 35544, 35551 (July 26, 1991) (listing the
26 specified types of places of public accommodation, such as "1. [p]laces of lodging;
27 2. [e]stablishments serving food or drink;… 5. [s]ales or rental establishments;
28 [and] 6. [s]ervice establishments"). Much like a grocery store or clothing store,

1  Defendant sells goods to the public. These "sales establishments" are categorically
2  distinct from "service establishments" which, like a dry cleaner or barber shop,
3  have a functional purpose in selling useful skill or labor to the public rather than a
4  tangible commodity. *See* 42 U.S.C. § 12181(7)(E), (F) (listing examples of "sales
5  or rental establishment[s]" and "service establishment[s]" in separate enumerated
6  categories of public accommodations).

7  As Plaintiff does not and cannot dispute, Defendant's online promotional
8  videos merely advertise merchandise, and are not themselves goods, nor are these
9  videos part of the process whereby sales transactions are completed. As such, the
10 use of these online videos is beyond the scope of the Title III access requirements
11 imposed on "sales establishments" like Defendant.

12 By the same token, promotional advertising does not share any of the
13 distinctive features of those services offered by listed "service establishments."
14 Just as a service establishment's sale of services to the public does not convert it
15 into a "sales establishment," Defendant's use of advertising to promote the sale of
16 goods cannot be used to artificially designate it as a service establishment that
17 provides promotional services.

18 Again, Plaintiff does not dispute the fact that Defendant is not a service
19 establishment. Nor does he dispute the fact that Defendant does not sell its online
20 videos or utilize them in the actual process of consummating sales, *i.e.*, Defendant
21 does not make online sales through the videos on its website. Instead, Plaintiff
22 cites—without any meaningful discussion—three cases: *National Federation of the*
23 *Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006); *Rendon v. Valleycrest*
24 *Productions, Ltd.*, 294 F.3d 1279 (11th Cir. 2002); and *Carparts Distribution*
25 *Center v. Automotive Wholesaler's Ass'n*, 37 F.3d 12 (1st Cir. 1994).

26 As a procedural matter, Plaintiff's failure to address Defendant's arguments
27 (and his associated tacit concession that dismissal is appropriate)[1] is not salvaged

28 _____
[1] "In most circumstances, failure to respond in an opposition brief to an argument

1  by a perfunctory string citation without any discussion of the relevance. *See Indep.*
2  *Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003) (noting that
3  "[j]udges are not like pigs, hunting for truffles buried in briefs," but rather "[o]ur
4  adversarial system relies on the advocates to inform the discussion and raise the
5  issues to the court"; refusing to "manufacture arguments" or "address any statute or
6  regulation that was not accompanied by legal argument"). Moreover, upon review
7  of these cases it quickly becomes apparent that they actually support Defendant's
8  position.

9  In *National Federation of the Blind*, the defendant retailer Target did not
10 raise, and the court did not have occasion to address, the fact that the conduct of
11 "sales establishments" is governed by the ADA only to the extent such conduct
12 concerns the actual sale of goods. This was because of the critical fact that the
13 defendant in that case actually consummated sales through the challenged website.
14 *Nat'l Federation of the Blind*, 452 F. Supp. 2d at 949 (noting that "[b]y visiting
15 Target.com, customers can purchase many of the items available in Target stores.").
16 Thus, the allegedly inaccessible features of the Target.com website precluded the
17 class of blind individuals from equal access to the actual purchase of "goods"
18 offered at Target stores. Indeed, Target.com not only provided for the purchase of
19 goods sold at the Target stores, but it also provided access to actual services,
20 including pharmaceutical and photo developing services.

21 In *Rendon*, the Eleventh Circuit considered whether an automated telephonic
22 selection process that allegedly denied disabled individuals an equal chance to be
23 contestants on the show "Who Wants to Be a Millionaire" was a discriminatory

---

put forward in an opening brief constitutes a waiver or abandonment in regard to the uncontested issue." *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (citation omitted); *see also Uribe v. Countrywide Fin. Corp.,* 2009 WL 1953413, at *6 (S.D. Cal. July 7, 2009) ("Plaintiffs chose not to address defendants' detailed contentions concerning the appropriateness of dismissal of these claims and as a result, plaintiffs have waived any opposition they may have to those arguments.").

16829168.3 - 6 - REPLY ISO 99¢ ONLY STORES'
MOTION TO DISMISS
NO. 12-CV-1308-DSF(AJWx)

procedure that prevented disabled persons from enjoying a privilege of a "place of exhibition or entertainment," an enumerated category of public accommodation. 294 F.3d at 1282-83. Notably, the defendants conceded "that the Millionaire show takes place at a public accommodation (a studio) within the meaning of 42 U.S.C. § 12181(7)(C) (covering theaters and other places of entertainment), and that . . . . the opportunity to appear on Millionaire and compete for one million dollars is a privilege or advantage as those terms are defined by the ADA." *Id*. at 1283. The defendants argued, unsuccessfully, that the ADA did not govern the hotline because the discriminatory screening procedure occurred off-site and operated only as an intangible barrier to gaining access to the privilege of competing on the show. *Id*. Once again, however, the case never addressed whether the ADA restricts the conduct of "sales establishments" only to the extent such conduct concerns the actual sale of goods.

Finally, and once again without any explanation for the citation, Plaintiff relies on the First Circuit's decision in *Carparts*. As set forth below, this opinion is far more relevant to Defendant's second argument, *i.e*., the argument that there is not a sufficient nexus between the online videos at issue and the physical stores themselves. On this point, as also explained below, *Carparts* is contrary to well-established Ninth Circuit precedent. *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1115 (N.D. Cal. 2011) (rejecting plaintiff's argument premised on out-of-circuit case law, including *Carparts,* and noting that "this Court must adhere to Ninth Circuit precedent"). Indeed, Plaintiff's own cited authority, *National Federation of the Blind*, contrasted *Carparts* when holding that the "Ninth Circuit has declined to join those circuits which have suggested that a 'place of public accommodation' may have a more expansive meaning." 452 F. Supp. 2d at 952 (citing *Carparts*, 37 F.3d at 19-20).

In any event, the only portion of *Carparts* potentially relevant to the instant issue highlights the obvious difference between a "sales establishment" and a

1  "service establishment" under Title III.  The defendants in *Carparts* operated a
2  travel service, an example of a "service establishment" explicitly listed in Title III.
3  *Carparts*, 37 F.3d at 19.  In discussing the applicability of Title III to the
4  defendants' travel service business and other service establishments, the First
5  Circuit observed that "persons who enter an office to *purchase services* are
6  protected by the ADA." *Id*. (emphasis added).  In other words, covered "services"
7  are those purchased from businesses that market intangible services, rather than
8  goods, to the public, and those services are covered by the ADA's access
9  restrictions. *See also Coast Van Lines v. Armstrong*, 167 F.2d 705, 706 (9th Cir.
10 1948) (finding that "service establishment" as used in the Fair Labor Standards Act
11 is a "purveyor[] of services, as distinguished from goods, whose business [i]s
12 likewise conducted directly with the consuming public, such as the barber shop,
13 beauty parlor and tailor shop.").

  In short, putting aside the lack of a nexus between the online promotional videos and the sales at the stores themselves (the issue addressed in the next section), the instant claim is initially defective as a matter of law because the online videos are not conduct covered by the ADA.  This is because Defendant is a sales establishment, not a service establishment, and so the only conduct covered by the ADA is that which has to do with the actual sale of goods.  In other words, and perhaps not surprisingly, a sales establishment's promotional videos promoting (but not actually selling) merchandise are not a "service" covered by the ADA's access requirements.

  **B.**  **Even If Generally Covered by the ADA, Defendant's Promotional Videos Available Online Still Lack the Requisite Nexus to Services Available in a Physical Place of Public Accommodation.**

Even if a sales establishment's use of online promotional videos could be deemed a "service" covered by the ADA, Plaintiff still cannot state a claim premised on allegedly unequal access to these videos because he does not and cannot allege "there is a 'nexus' between the challenged service and the place of

1  public accommodation." *Nat'l Federation of the Blind*, 452 F. Supp. 2d at 952.
2  Plaintiff does not acknowledge the nexus requirement, much less make any attempt
3  to explain how promotional videos available for viewing online are an extension, or
4  mirror, of any service offered through physical 99¢ Only Stores.

5       Instead of addressing Defendant's nexus argument, Plaintiff simply
6  mischaracterizes it.  Specifically, Plaintiff claims that following Ninth Circuit
7  precedent and adopting Defendant's position would "effectively limit the scope of
8  Title III to the provision of ramps, elevators and other aids that operate to remove
9  physical barriers to entry." (Opp'n at 5.)   In reality, however, Defendant has not
10 argued that the ADA is violated only if a plaintiff is "den[ied] physical access to its
11 brick-and-mortar stores."  (*Id*. at 4.)  Instead, as Defendant explained in its opening
12 brief, "[w]hile the ADA's protections are not necessarily limited to assurances of
13 physical access to brick-and-mortar facilities, a plaintiff seeking to assert a claim
14 such as the one at bar must establish a nexus between the service at issue and those
15 of the physical location—*i.e.,* he must establish that the service he is allegedly
16 being denied is one which is also offered to the public at the actual physical store."
17 (Mot. at 3 (citing *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114
18 (9th Cir. 2000).)

19      Without addressing the Ninth Circuit's holding in *Weyer* or the actual nexus
20 argument advanced, Plaintiff again cites the same three cases, claiming that
21 Defendant's position has been expressly rejected.  This is not so.  In *National*
22 *Federation of the Blind*, the court made clear that "[u]nder Ninth Circuit law, a
23 'place of public accommodation,' within the meaning of Title III, is a physical
24 place," a standard that is more restrictive than that espoused by the First Circuit in
25 *Carparts.*  452 F. Supp. 2d at 952 (citing *Weyer*, 198 F.3d at 1114 and
26 distinguishing *Carparts*, 37 F.3d at 19-20).   After recognizing the requirement that
27 there be a nexus with a physical place of public accommodation, the court held that
28 the plaintiffs in that case could state a claim under Title III only to the extent that

16829168.3                                                  - 9 -                                         REPLY ISO 99¢ ONLY STORES'
                                                                                                              MOTION TO DISMISS
                                                                                                       NO. 12-CV-1308-DSF(AJWx)

1  "the inaccessibility of Target.com impedes the full and equal enjoyment of goods
2  and services *offered in Target stores.*"  *Id*. at 956 (emphasis added).  Of course,
3  Target used the challenged portions of its website to consummate actual sales of the
4  very goods that it also sold in its stores.  Here, on the other hand, it is undisputed
5  that Defendant does not consummate sales through its website, let alone the specific
6  online promotional videos at issue in the case.

7        Similarly, the plaintiffs in *Rendon* who called the "Who Wants to be a
8  Millionaire" contestant hotline sought "the privilege of competing in a contest held
9  in a concrete space."  294 F.3d at 1284.  The discriminatory selection process
10 "screen[ed] out disabled persons from participation in a competition held in a
11 tangible public accommodation" and so, as the court observed, "a nexus between
12 the challenged service and the premises of the public accommodation [was] surely
13 present."  *Id*. at 1282, 1284 n.8.  Unlike the automated hotline that would-be
14 millionaires were required to use to gain access to the actual television sound stage
15 in that case, however, Defendant's customers do not need to view the promotional
16 videos in order to purchase goods.  In fact, they cannot use the videos or website to
17 do so.

18       Tellingly, Plaintiff offers no limiting principle for his claim that the
19 promotions and advertising of sales establishments (and perhaps others) are subject
20 to the access requirements of the ADA.  In particular, Plaintiff does not cite a single
21 case within this circuit supporting his apparent view that a "service" offered
22 exclusively online can form the basis of an ADA claim.  There is a reason for this—
23 the case law in this circuit is clear that the challenged service must be one that is
24 also offered to the public at a physical structure.  *See Weyer*, 198 F.3d at 1115
25 (adopting Sixth Circuit's reasoning in finding "dispositive the fact that there was
26 'no nexus between the disparity in benefits and the services which [defendant
27 insurance company] offers to the public from its insurance office.'"); *Facebook*,
28 790 F. Supp. 2d at 1115 ("While Facebook's physical headquarters obviously is a

1  physical space, it is not a place where the on-line services to which [plaintiff]
2  claims she was denied access are offered to the public."); *Ouellette v. Viacom*, 2011
3  WL 1882780, at *5 (D. Mont. Mar. 31, 2011) (dismissing claim alleging
4  discriminatory access to certain websites' "on-line theater[s]" where plaintiff failed
5  to assert a sufficient connection to "any actual, physical structure or facility through
6  which [the] services could be accessed or provided.").

7      Plaintiff does not attempt to explain how he could cure this legal barrier to
8  his claim, and given the undisputed nature of the pertinent facts, he cannot do so.
9  Accordingly, Defendant respectfully requests that the Court grant the instant motion
10 with prejudice. *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004) (holding
11 that a court may deny leave to amend where a plaintiff "presented no new facts but
12 only new theories and provided no satisfactory explanation for his failure to fully
13 develop his contentions originally").

14 **III.  CONCLUSION**

15     For the foregoing reasons, Defendant respectfully requests that the Court
16 dismiss the instant action with prejudice.

18 DATED: March 12, 2012                    MUNGER, TOLLES & OLSON LLP

20                                          By:      */s/ Erin J. Cox*
                                                     Erin J. Cox

21                                          Attorneys for Defendant
22                                          99¢ ONLY STORES